[Civil No. 1822.   Filed April 19, 1921.]

[196 Pac. 1028.]

# C. F. AINSWORTH, Appellant, v. I. J. LIPSOHN, Appellee.

1. LIMITATION OF ACTIONS—WHERE DEFENDANT TESTIFIED THAT THE ACCOUNT STATED WAS CORRECT AND HE WOULD PAY IT, HE WAIVED THE STATUTE HE HAD PLEADED.—Where the defendant pleaded the statute of limitations, Civil Code of 1913, paragraph 711, to an account stated, and on trial, while testifying, admitted that the account was presented to him about the time it was due, that it was correct, and that he had said that he would pay it, he explicitly waived such defense by his testimony, in which he also stated that he did not plead the statute to such stated account.

2. LIMITATION OF ACTIONS—WHETHER PLEA WAS WITHDRAWN AND ABANDONED BY DEFENDANT'S TESTIMONY WAS A COURT QUESTION.— Whether a plea of limitation was withdrawn and abandoned by defendant in his testimony was a question of law for the court.

3. APPEAL AND ERROR—INSTRUCTION PLACING TOO GREAT A BURDEN ON PLAINTIFF-APPELLEE HELD NOT AVAILABLE TO DEFENDANT AS ERROR.—In an action involving an account stated, where defendant pleaded statute of limitations and abandoned it by his testimony, and the court instructed that, if the jury believed the parties had agreed that such account stated should become due and payable only at such time as appellant should make deal concerning his property, the statute of limitations would not apply, and account could be recovered, provided it found the deal had been consummated, implying that, if it did not believe such to be the agreement, the statute would apply, placed an extra burden on the plaintiff-appellee, but is not available to defendant-appellant as error.

4. LIMITATION OF ACTIONS—RIGHT TO SUE ON CONTRACT TO PAY FOR SERVICES ON SALE OF PROPERTY ACCRUES ON SALE.—Where, under agreement of the parties, no part of plaintiff's salary became due and payable until sale of defendant's property, the statute of limitations did not begin to run until the property was sold.

5. LIMITATION OF ACTIONS—NO SUSPENSION OF STATUTE AS TO ITEMS OF ACCOUNT FOR SALARY, WHEN MONTH'S SALARY DUE AT CLOSE OF EACH MONTH.—The rule that, when the statute of limitations has once attached to any item of an account, it will continue

1.  Limitation of action as applied to account stated, note, 14 A. L. R. 240.

to run, and will not be suspended by any subsequent disability, applies where under the contract of employment each month's salary becomes due and payable at the close of the month.

6. MASTER AND SERVANT—EVIDENCE HELD TO SUSTAIN RECOVERY OF SALARY.—In action to recover salary under an agreement that it should be paid upon defendant's sale of certain property, evidence held sufficient to support the jury's finding that the defendant had disposed of such property, realizing therefrom more than sufficient to settle plaintiff's claim.

APPEAL from a judgment of the Superior Court of the County of Maricopa. R. C. Stanford, Judge. Affirmed.

Mr. R. E. Sloan, Mr. C. R. Holton, and Mr. Greig Scott, for Appellant.

Mr. J. E. Morrison, for Appellee.

McALISTER, J.—Appellant prosecutes this appeal from a judgment against him for $8,219.63 and from an order denying his motion for a new trial.

The complaint alleges in substance that I. J. Lipsohn, appellee, performed work, labor, and services for C. F. Ainsworth, appellant, at his instance and request, between the first day of October, 1911, and the first day of August, 1919, at an agreed salary of $100 per month, payable monthly, and that no portion of the amount earned during this period, to wit, $9,500, has been paid, except the sum of $1,058.15, leaving a balance due and unpaid of $8,441.85. It alleges further that on the twenty-seventh day of June 1914, there was stated an account between appellee and appellant for the period ending June 1, 1914, which showed a balance of $2,141.85 then due appellee, and that appellant agreed at that time to pay appellee said amount as soon as he could procure the funds therefor, and requested him to continue his employment as before, stating that as soon as he "was able to sell and dispose of certain prop-

erty known as the Gila Bend Canal and a certain dam site connected with said canal, situated in the county of Maricopa, Arizona, he would pay the plaintiff all that was coming to him for his services and labor''; that appellee, relying on this statement, continued to work for appellant until August 1, 1919, when he (appellee) terminated the employment because appellant failed and neglected when requested, to pay appellee the amount due, though appellant had succeeded, in June, 1919, in selling and disposing of his Gila Bend Canal and dam site.

The answer denies that appellant is indebted to appellee in any amount, and alleges that in the year 1914 appellee began the practice of law on his own account, and has not since that time been in the employ of appellant in any capacity whatever, though he has had at all times since then the use of appellant's office, library, and other equipment, in consideration for which he agreed to, and did, look after appellant's law business during his absence. The statute of limitation (paragraph 711, Rev. Stats. 1913) was pleaded as a defense to each item of the account which had accrued more than three years previous to the bringing of the suit in September, 1919, and separately to that part of the complaint alleging a stated account in June, 1914.

It appears from the evidence that appellee, an attorney of New York City, came to Phoenix in 1902 to enter the employ of appellant, an attorney with an extensive practice, at a salary of $75 per month, as a law clerk and stenographer, and that within five or six months thereafter this was raised to $100, at which sum it remained until the employment was terminated; that in the month of June, 1914, appellee presented to appellant a statement of the account between them for a period of thirty-two months—October 1, 1911, to June 1, 1914—showing a correct bal-

ance of $2,141.85 then due appellee. At this point the testimony diverges—appellee testifying that he presented the account because it had been dragging for some time and he wanted it adjusted, and that when it was shown appellant, no objection to its correctness was made by him, but he stated that he was not then in a position to pay it, and requested appellee to continue the employment until appellant could sell or dispose of his property known as the Gila Bend Canal and dam site, and that he would then pay him everything coming to him, and that appellee accepted this proposition and remained in appellant's employ until August 1, 1919; while appellant testifies that appellee stated that he wanted the salary adjusted because he was going in the practice for himself, but that after some conversation it was agreed that appellee would continue to look after appellant's business during his absence, and in consideration therefor that he would occupy one of the rooms in appellant's office and use his library and other office equipment in appellee's private practice.

It is thus apparent that it was necessary for the jury to decide, first, when the employment ceased, whether in June, 1914, or on August 1, 1919; and, second, whether appellant had sold and disposed of his Gila Bend Canal and dam site previous to the bringing of the action. Most of the testimony was elicited with these two propositions in view; the larger portion of it being directed toward the first one. To have reached the verdict it did, the jury must have decided both in favor of appellee. No objection is raised to the finding that the employment ceased August 1, 1919, rather than in June, 1914, inasmuch as there is substantial evidence in favor of both dates; but it is urged that there is no evidence to support the finding that appellant had

sold and disposed of his Gila Bend Canal and dam site.

As a defense to the account stated, as well, in fact, as to all of the account which accrued more than three years previous to the commencement of the action on September 10, 1919, appellant interposed the plea of the statute of limitations, and assigns error upon the court's refusal to instruct the jury that each item of the account—that is, each month's salary—which accrued prior to September 11, 1916, was barred by the provisions of paragraph 711, Revised Statutes of 1913, which reads as follows:

"There shall be commenced and prosecuted within three years after the cause of action shall have accrued, and not afterward, all actions or suits in courts of the following description: . . . (2) Actions upon stated or open accounts other than such mutual and current accounts as concern the trade of merchandise between merchant and merchant, their factors or agents."

We will consider the plea as applied to the account stated, first and separately, because it rests upon a somewhat different basis from the remainder of the account. Upon cross-examination the following testimony regarding the $2,141.85, shown by this account to be due, was given by appellant, namely:

"Q. And did you owe him the amount of the statement furnished you in 1914? A. Yes; that statement was correct, I think, at that time.

"Q. You still owe him that amount, don't you? A. No.

"Q. Why not? A. Why, he got $222 that same fall.

"Q. You owe him that amount less the $222? A. I haven't paid him any more money.

"Q. You owe him— A. That is the amount, yes; he gave me that statement.

"Q. Did you plead the statute of limitations as to that? A. I haven't pleaded—I have pleaded any-

thing, if anybody attempts to beat me out of money.
If I owe him a dollar, I will pay him.   I wrote him I
would pay him.

"Mr. Morrison: Read the question.   (Question was
read by the reporter.)   A. The pleadings speak for
themselves.

"Mr. Morrison: The pleadings have not been read.
Your attorney did not read your answer, as I under-
stand it.

"Q. Do you refuse to answer that question? A.
(No answer.)"

Here is an admission of an indebtedness of
$2,141.85 less $222, due appellee in 1914, and appel-
lant's reply, when asked if he had pleaded the statute
of limitations as to it, that he had not pleaded, that
if he owed appellee a dollar he would pay him, that
he wrote him he would pay him, being a statement
under oath in open court, should not be treated as
idly spoken, but given, so far as possible, its full pur-
port, as appellant undoubtedly intended it should be.
The condition upon which he testifies he will pay, "if
I owe him a dollar," having been shown by his own
admission, on both direct and cross-examination, to
have been at that time true, in so far as it referred
to the stated account, and the fact that his answer
had not been read to the jury in accordance with the
requirement of trial court procedure, placed appel-
lant in the position of saying to the jury, "I owe ap-
pellee $2,141.85, less $222, and will pay him," though
the judge, who was familiar with the allegations of
the answer, knew it contained a defense which, if
applicable and insisted on, would relieve him from
doing what he was promising.   If appellant intended
that effect should be given his testimony, he must
have intended thereby to abandon and withdraw the
barrier to such action appearing in his answer, to wit,
the plea of the statute of limitations, for in no other
way could his purpose as thus manifested be carried

out; and especially is this true since reliance on this defense, as well as the pleading of it originally, was entirely optional with him. The indebtedness having been admitted, to construe the promise to pay as referring to some time in the future, after the jury shall have said by its verdict, arrived at by applying the statute of limitations, that appellee was not entitled to judgment against appellant, would be permitting him to profit by testimony directly in conflict with his pleading; in other words, to avail himself of a defense that would relieve him from doing what he testifies he will do.

But, in addition to the foregoing, appellant's reply is virtually an express withdrawal of the plea, for he undoubtedly intended by the first three words thereof, "I haven't pleaded," to say that he had not pleaded the statute of limitations as to the stated account, because that other part of the same reply, "I have pleaded anything, if anybody attempts to beat me out of money," cannot refer to the account stated, since by no "stretch of the imagination" could an effort to collect by suit an admitted indebtedness be construed as an "attempt to beat" one out of money. By this expression he could only have referred to that part of the claim which was disputed; that is, for services alleged to have been rendered after June, 1914, when, the answer alleges, appellee began the practice of law on his own account. The other reply, that "the pleadings speak for themselves," cannot avail appellant in the face of his testimony. One who has pleaded the statute of limitations may withdraw it, since it is a defense in the nature of a personal privilege which he may plead or not as he desires. 14 R. C. L. 881; *Moore* v. *Stuart,* 215 Mass. 455, Ann. Cas. 1914D, 472, 102 N. E. 658; *Welton* v. *Boggs et al.,* 45 W. Va. 620, 72 Am. St. Rep. 833, 32 S. E. 232; *Sterrett* v. *Sweeney,* 15 Idaho, 416, 128 Am. St.

Rep. 68, 20 L. R. A. (N. S.) 963, 98 Pac. 418. And where one who has set it up as a defense states explicitly while testifying that he does not plead the statute, the plea must be regarded as withdrawn (*Lewis* v. *Buckley,* 73 Miss. 58, 19 South. 197); and this is just as true where the testimony given implies a withdrawal.

If appellant still relied on his plea of the statute of limitations, instead of saying to the court and jury that he owed appellee and would pay him, he should have stated, after having admitted the indebtedness, that he was not going to pay it, because it was barred by the statute of limitations. In *Carruth* v. *Paige,* 22 Vt. 179, the defendant testified that he would not take advantage of the statute of limitations, but, if it was a just account, he would pay it, but at the same time contended that it was not a just account. The court said:

"That to prevent . . . the statute [of limitations] 'there must be an acknowledgment of the debt as still due, with an apparent willingness to remain liable for it, or at least without any avowed intention to the contrary.'"

Both of the conditions here given as necessary to prevent the statute from running—acknowledgment and willingness to pay—are present in appellant's declaration to the court and jury.

Whether the plea was withdrawn and abandoned was a question of law for the court (*Moore et al.* v. *Stuart et al.,* 215 Mass. 456, Ann. Cas. 1914D, 472, 102 N. E. 658); but the instructions made no reference to it. The jury was told in substance that, if it believed from the evidence that appellant and appellee agreed on June 27, 1914, that the amount shown to be owing by the stated account should become due and payable only at such time as appellant should make a deal concerning his Gila Bend property, the statute of

limitations would not apply, and the amount of the stated account could be recovered, provided, of course, it further found that such deal had been consummated. This necessarily implies that, if it did not believe such to be the agreement, the statute would apply and thereby defeat recovery. This instruction placed an extra burden on appellee, which he should not have been required to carry after the withdrawal of the plea. We are unable, therefore, to find any error of which appellant can complain in the court's instructions, or its refusal to instruct, regarding the defense of the statute of limitations as applied to the stated account.

The giving of the following instruction is assigned as error, to wit:

"And if you further find from the evidence and testimony in this case that the plaintiff did continue in the employ of the defendant, and did continue to render services to the defendant under the agreement just referred to, up and until a certain deal was made by 'the defendant concerning his interests in said Gila Bend Canal property,' and did further continue in the employ of defendant up and until the first day of August, 1919, then I charge you that the plaintiff is entitled to recover from the defendant for his services for the period claimed in the complaint, less any amounts paid to the plaintiff by defendant during that period, 'at the rate of one hundred dollars per month,' if you further find from the evidence that that sum was the monthly amount agreed upon by the plaintiff and defendant to be paid said plaintiff by the defendant for his said services."

Was the failure to submit the defense of the statute of limitations to the items of the account, that is, to each monthly salary, earned after June, 1914, and more than three years prior to September 11, 1919, the date of the commencement of suit, error? As before observed, appellee had testified that, when the stated account was presented to appellant on June 27,

1914, it was then agreed between them that he would continue his employment until such time as appellant could sell or dispose of his interest in the Gila Bend Canal and dam site, and that appellant would then pay him in full for all services remaining unpaid, and that in pursuance of this agreement he continued in appellant's employ until August 1, 1919, or until some two months after the sale or disposition by the latter of his interest in the Gila Bend Canal and dam site; while appellant had testified that appellee was not in his employ after June, 1914, except to the extent of looking after appellant's business during his absence, in consideration for which it was agreed that appellee should have, without further charge, the use of one room of appellant's office, his library, and other office equipment in his own practice. In other words, according to appellee, he agreed to continue the employment as before, but without pay for his services from then on, as well as for those previously rendered, until appellant could sell his Gila Bend property. Under this agreement no part of appellee's salary became due and payable—that is, no item of the account accrued—until the sale of the property mentioned, which, according to appellee, was in June, 1919. The statute of limitations, therefore, did not begin to run until that date, and was properly omitted from the instruction. It was only a question as to which statement the jury would believe—that the employment continued until, and was to be paid for only when, appellant's Gila Bend property was sold, or that it ceased in June, 1914. It is evident that the statute of limitations could have no application in either event, since under appellee's contention it could not begin to run until the sale of this property, and under appellant's there was no employment, and therefore no salary had been earned which could be

barred. The rule in a situation of this kind is very clearly stated in 17 R. C. L., pages 755, 756:

"Where some condition precedent to the right of action exists, whether it be a demand and refusal or some other act or contingency, the cause of action does not accrue, nor the statute begin to run, until that condition is performed. Thus, if a debt is not absolutely or presently due, but either the obligation to pay or the time of payment is contingent on the performance of some act, the happening of some event or the lapse of a specified period of time, then the happening of the event is a condition precedent to the present obligation to pay, and the debtor is not in default nor the creditor entitled to call for performance until the condition is fulfilled, and the statute cannot begin to run until that time."

The rule contended for by appellant, that when the statute has once attached to any item of an account it will continue to run, and will not be suspended by any subsequent disability, applies where under the contract of employment each month's salary becomes due and payable at the close of the month. *Overstreet* v. *Wichita Falls & N. W. R. A.* (Okl.), 175 Pac. 354; *Kelley* v. *Gallup,* 67 Minn. 169, 69 N. W. 812; *Semmes* v. *Hartford Fidelity Ins. Co.,* 80 U. S. (13 Wall.) 159, 20 L. Ed. 490 (see, also, Rose's U. S. Notes).

It only remains to consider whether there is sufficient evidence to support the jury's finding that appellant sold and disposed of his Gila Bend Canal and dam site. The allegation of the complaint is that he sold and disposed of this property, while the instruction, in referring to the transaction, uses the words "made a deal." Appellant urges that a sale and a deal are not the same. It is true that a deal is not in every instance a sale, but a sale is always a deal; the term "sale" not being quite as broad as the term "deal." It is evident from a reading of the entire

record that, in the instructions as well as in the testimony of appellee and the witness Eads, the word "deal" is used in the sense of "sale" and conveyed that impression to the jury. Appellee testified as follows concerning the transaction in question:

"Q. What, if anything, did Judge Ainsworth ever say to you about having accomplished a deal upon the Gila Bend property that you have spoken of before . . . ? A. Just shortly before Mr. Ainsworth left on his vacation, I think it was the latter part of June, 1919, he told me that he had made a deal with Mr. Gillespie by which he had sold out his interest in the Gila Bend Canal.

"Q. Was that the property to which you referred in your conversation at the time you presented the statement to him? A. Yes, sir; that was the same property.

"Q. Go ahead. 'A. He told me that he received a certain sum of money—

"Q. How much? A. I do not recollect now whether he said $30,000 or $40,000.

"Q. Yes? A. And that he had also received a certain amount of stock, or retained a certain amount of stock, and that he had been retained by Mr. Gillespie under a retainer to act as counsel. . . . "

The witness Eads testified that appellant owned the water and dam site north of Gila Bend; that he handled it for him, and with the assistance of a Mr. Murphy consummated a deal concerning it for appellant, by selling it to a Mr. Gillespie. It is gathered from appellant's testimony that he organized the Gila Water Company, was one of its stockholders (is now in a smaller way), and was until recently its president. It appears, further, that his interest in the Gila Bend Canal and dam site was through his ownership of stock in the Gila Water Company, which was itself the holder of the title to the canal and dam site. Testifying regarding a deal of this company, appellant said:

"Q. That company did make some kind of a deal, didn't it? A. What company?

"Q. The Gila Water Company. A. Yes; the Gila Water Company made some kind of a deal.

"Q. And you were interested in that as a stockholder? A. I had some stock in that company, and have some yet. I haven't as much as I used to have, but I have some yet.

"Q. And you were the president? A. No; I am not the president.

"Q. You were the president? A. I organized the company, and was president until a short time ago.

"Q. It was your company? A. No; it was not my company. There was a lot of Peoria people in it. I was only one of them.

"Q. You were the president until the deal was made? A. There wasn't any deal made by the company. The company is still in existence, just as it always was. The company didn't sell anything, I want you to understand.

"Q. But there was about $30,000 or $40,000 paid on that matter? A. No.

"Q. In this deal? A. Thirty thousand dollars; Mr. Murphy got $300—

"Q. I mean this company? A. No; this company got $25,000 in money."

It cannot be ascertained from this statement whether the Gila Water Company made a deal or not, as appellant both affirms and denies it, but the positive assertion is made that it sold nothing, though it "got $25,000 in money"; the record being silent as to the consideration therefor. Since he did not have as much stock as "he used to have," it had evidently been sold or given away. On June 23, 1919, appellee wrote appellant in part as follows, demanding payment:

"When you made the deal in reference to the Gila Bend Canal and dam, I thought surely you would make some mention of what you intended to do in regard to what is due me, but up to the present the matter has been wholly ignored, not a word being

mentioned about it by you. . . . You advised me that you had paid off practically all of your debts, and I was glad of that; but it does seem, after a man has been with you as long as I have, and has stayed with you for the past six years under the existing conditions without murmuring, that some attention should be paid to him."

In his reply, dated July 22, 1919, appellant speaks of the Gila Bend deal, and admits in effect that a transaction concerning it was had, but tells appellee that he is very much mistaken when he says he (appellant) got any money out of the deal. It is nowhere denied that the property involved in this transaction is the same as that to which appellant and appellee both referred as the Gila Bend Canal and dam site, when, as testified to by appellee, the contract of June 27, 1914, was entered into.

The foregoing statements of the appellant himself, coupled with those of the witness Eads, together with the testimony of appellee that appellant told him that he had sold this property and had received $30,000 or $40,000 for it, is sufficient to sustain the jury's finding that appellant had sold and disposed of his interest in the Gila Bend Canal and dam site, or what, under the evidence was the same thing, his stock in the Gila Water Company, or a portion thereof, from which was realized much more than sufficient to settle appellee's claim.

No error appearing in the record, the judgment is affirmed.

ROSS, C. J., and BAKER, J., concur.